IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHANNA B. MIRABAL,

    Plaintiff,

v.                                                                           CIV 04-0811 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

# MEMORANDUM OPINION AND ORDER

    Plaintiff Johanna Mirabal has a tenth grade education and virtually no work history. The few jobs she did hold do not qualify as substantial gainful employment. She applied for Supplemental Security Income benefits in November 2001, claiming she became disabled as of that date due to panic attacks, depression, a nervous condition, and forgetfulness. Administrative Law Judge ("ALJ") Larry E. Johnson found that Plaintiff has the residual functional capacity to perform a full range of simple and unskilled medium or heavy work and, therefore, is not disabled under the Medical-Vocational Guidelines or "Grids." The Appeals Council declined review in May 2004, thereby rendering the ALJ's decision final. *E.g., Administrative Record* ("*Record*") at 5-6, 13-20, 56-62, 67, 76.

    This matter is before the Court on Plaintiff's motion to reverse or remand, where she asserts that the ALJ committed five errors. *See Docs. 8, 9.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 2, 4.*

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *E.g., Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).[1] My assessment is based on a "meticulous" review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *Hamlin,* 365 F.3d at 1214; *see also Langley,* 373 F.3d at 1118.

The entire record has been read and carefully considered. For the reasons and authorities stated by Defendant in her response, *see Doc. 9,* which I incorporate herein by reference, I find that Plaintiff's motion should be denied and the decision of the Commissioner affirmed. I write separately, however, to add a few additional observations.

## I.  Background

The medical records demonstrate that Plaintiff had family difficulties during the period in question – an incarcerated ex-husband who was subsequently released and wanted to see the children; difficult children, one of whom also had trouble with the law; the murder of her brother; and the deaths of grandparents. She filed for benefits in November 2001 within days after her gynecologist, Dr. Lonnie D. Alexander, prescribed Prozac for depression. A month later, he also gave her Paxil and Xanax, and she began counseling at the Clovis Counseling Center with

---

[1] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214; *Doyal,* 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record of if there is a mere scintilla of evidence supporting it." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214.

Licensed Professional Clinical Counselor Susan L. Tatum.

Tatum stated that Plaintiff was "into 'victim role' & desires to stay there," and that her "[a]goraphobia is not improving but she resists doing anything that would improve it. Is stuck in feeling sorry for herself." *Id* at 103. Plaintiff only saw Tatum twice during a three-week period after her initial consultation and then discontinued therapy. Contrary to Tatum's observations that she was not improving, Plaintiff told Dr. Alexander a few days after her last counseling session in December 2001 that she was "much better on Paxil and Xanax." *Record* at 142; *see also id.* at 56, 103-06, 143, 146, 172, 182, 186-87.

In February 2002 consulting psychologist Raiman K. Johnson conducted a mental status examination of Plaintiff. He observed that Plaintiff appeared depressed, labile and seemed to have low self-esteem, but saw "no evidence of any significant long or short-term memory deficit." *Id.* at 107. He reported that she demonstrated adequate psychological sophistication, acceptable socialization skills, and ability to understand abstract concepts and engage in deductive reasoning; did not demonstrate any symptoms suggesting overt psychoses or neuroses or loose associations; and presented with slowed but intact thought processes with "somewhat" impaired judgment and insight, an adequate "fund of information," and intact "executive functions." *Id.* at 108. Johnson, as had Tatum, diagnosed Plaintiff with depression and anxiety related to her family difficulties, and he assessed a GAF score of 50. While Tatum had diagnosed a panic disorder, Johnson diagnosed delayed onset of post-traumatic stress disorder. *See id.* at 108-09, 187.

Based on this consultation, agency reviewing sources concluded that Plaintiff did not meet Listings 12.04 or 12.06 for depression and anxiety, respectively. *See id.* at 113, 115, 120, 157. They found that Plaintiff's mental impairments do not significantly limit her, and that she has only

a "moderate" limitation in her ability to work with others without distraction, interact with general public, accept criticism from supervisors, get along with coworkers, respond to change in work setting, and set realistic goals or make independent plans. *See id.* at 124-25, 153.

Shortly after her claim was initially denied in March 2002, Plaintiff complained to Dr. Alexander of anxiety attacks and lack of concentration, and she asked him to refill her prescription for Xanax. She told him that she was attending counseling, but she was not. *See id.* at 33, 35, 141. A month later, Plaintiff visited the emergency room complaining of chronic epigastric/abdominal discomfort and stress. The doctors there refilled her Xanax prescription and gave her something for the upset stomach. Dr. Alexander also wanted to rule out H-Pylori as the source of her abdominal pain and heartburn. *Id.* at 139. However, he did not see her again, as there are no medical records of any subsequent visits to him. *See id.* at 128-31. Although she was advised to return to counseling with her children, Plaintiff did not do so, either individually or with her children.

In June 2002, soon after her claim was denied on reconsideration, Dr. Alexander wrote a "To Whom It May Concern" letter. The letter stated in full that "Johanna Mirabel is under Dr. Alexander's care she is taking antidepressants. She has not been able to work." *See id.* at 34, 41, 140. It was not until one year later in June 2003, however, that Plaintiff returned to the Clovis Counseling Center reporting the "same symptoms, problems & issues." *Id.* at 184. Tatum assessed her with a GAF of 40 at that time. *Id.* at 185. Plaintiff's counseling session apparently were subsidized, and she attended counseling sessions regularly for the next six months, up to the time of the ALJ's hearing. *See id.* at 96, 169-83, 192.

In July 2003, Plaintiff began to see Dr. Patricia J. Green at the Sparrow Family Medical

4

Clinic, but there are no documents of any medical visits from this doctor. Instead, the record merely contains letters and a prescription memorializing Dr. Green's belief that Plaintiff is unable to work. *See id.* at 162, 164, 190. Around this time Tatum also wrote her first "To Whom It May Concern" letter in which she stated: "Ms. Mirabal is not able to cope with simple life events and is dependent on help from children and parents. She finds it difficult to leave the house and therefore is not able to work." *Id.* at 159-60.

In November 2003, both Dr. Green and Tatum reiterated their opinions that Plaintiff was unable to work. *See id.* at 164-165. During that same time period, however, Tatum also indicated that Plaintiff was "improving" and "seems to be handling things well." *Id.* at 172. Moreover, the records reflect that Plaintiff had begun traveling for the purpose of relocating from Clovis. *See id.* at 170-71.

## II.  Analysis

Plaintiff argues that her medical records and treating physician opinions document mental impairments of a severity that meet the Listings and render her unable to work, and that ALJ Johnson impermissibly "ignored" this evidence. Arguing that those records and opinions constitute overwhelming substantial evidence of disability, Plaintiff faults ALJ Johnson for not crediting Plaintiff's assertions of complete inability to work and for basing his residual functional capacity finding on the assessments of the consulting and agency sources. *See Doc. 8* at 2-9, 11-13.

I disagree that ALJ Johnson erred in these respects. First, Plaintiff's seems to suggest that the mere documentation of a mental condition constitutes substantial evidence of disability. That is not the case. *See Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir. 1988) ("The mere fact that

[Plaintiff] was diagnosed as suffering from major depression does not automatically mean that [s]he is disabled.."). In addition, subjective statements, which constitute the bulk of the notes in Plaintiff's medical records, are not sufficient to establish a disability. *See Moore v. Barnhart,* 114 Fed. Appx. 983, 990 (10th Cir. 2004) ("Plaintiff's references to other statements she made . . . likewise do not establish a significant mental impairment of disabling proportions.").

It is clear from his opinion that ALJ Johnson did not ignore any of the evidence of Plaintiff's treating physicians, but rather, after thoroughly reviewing those records, he decided to assign little weight to the opinion letters. *See Record* at 15-18. None of Plaintiff's medical records note any functional limitations due to her mental condition, and none of her treating sources gave an opinion about Plaintiff's functional limitations. There simply is no objective medical evidence of any such limitations, much less the marked limitations necessary to meet Plaintiff's burden of showing a Listings-level impairment.

Moreover, the physicians who wrote opinion letters did not have a relationship with Plaintiff of any length. For example, after Dr. Alexander wrote his opinion letter in May 2002, he did not see Plaintiff again. There is a fourteen-month gap in medical records from May 2002 until July 2003, when Dr. Green says she started seeing Plaintiff. Yet there are no records of any visits to Dr. Green. Thus, as the ALJ noted, it is doubtful that Dr. Green qualifies as a "treating" physician.[2] Furthermore, he correctly noted that Tatum's opinion does not issue from an

---

[2] *See Record* at 16 ("Dr. Green was not the claimants' treating doctor as of July 2003. Thus, I do not give Dr. Green's opinions significant weight inasmuch as she had only begun to treat the claimant when she wrote this report."). As the Tenth Circuit has explained, the regulations and caselaw "require[] a relationship of both duration and frequency," and doctors are generally considered as "treating sources" when they have "seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment.'" *Doyal,* 331 F.3d at 763.

"acceptable" medical source.[3]

In any event, Dr. Green's and Tatum's opinions actually coincide with notes that suggest improvement. Further, these opinions only relate to a six-month period beginning Summer 2003, some two years after the alleged onset. It appears that consulting psychologist Johnson was the ***only*** mental health practitioner who saw Plaintiff during the twelve-month period after alleged onset. Plaintiff did not return to counseling during this period either, which, as the ALJ correctly concluded, bears negatively on her credibility. *See Record* at 16; *see also Williams v. Barnhart,* CIV 02-1025, Memorandum Opinion and Order June 20, 2003 at 17 ("The extent to which Plaintiff sought treatment for what he characterizes as debilitating depression is a legitimate "avenue of inquiry" in the credibility context," and authorities cited therein).

Finally, Plaintiff's treating sources simply utter unsupported and bare conclusions that she was unable to work. Such opinions are not conclusive of the issue of disability in the first

---

> A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source. Absent an indication that an examining physician presented 'the *only* medical evidence submitted pertaining to the relevant time period,' the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion.

*Id.* (citing *Reid v. Chater,* 71 F.3d 372, 374 (10th Cir. 1995), and adding emphasis).

[3] *See Record* at 17 ("the law is clear that a counselor is not an 'acceptable medial source' with regard to these types of medical options"); *see also, e.g., Bolton v. Barnhart,* 117 Fed. Appx. 80, 86-87 (10th Cir. 11/24/04) ("the therapists' conclusory statements to the effect that plaintiff was 'unable to work,' . . . do not provide a basis for reversing the ALJ's decision in this case, as there is no indication in the record that [they] are 'acceptable medical sources' under the governing regulations. *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a). Moreover, even if they are acceptable medical sources, they failed to provide any supporting information or documentation."); *Moraga v. Barnhart,* CIV 02-1407 KBM, Memo. Op. and Order March 3, 2004 at 14 (LPCC not "acceptable medical source" under 20 C.F.R. §1513(a)); *Detrick v. Barnhart*, CIV 02-0662 LCS, Memo. Op. and Order July 18, 2003 at 12 (an LPCC "is not an acceptable medical source" under identical provision, 20 C.F.R. § 416.913).

instance, and ALJ Johnson properly rejected them. Contrary to Plaintiff's assertion, ALJ Johnson was not required to engage in an extensive and detailed factor-by-factor analysis in giving his reasons for rejecting the conclusory and unsupported opinions of the sort present here.[4] Thus, Plaintiff's first, second, third, and fifth points of alleged error are unavailing.

Plaintiff's fourth argument concerns the use of a vocational expert and application of the Grids. The argument is based either on the success of the preceding arguments or misapprehends that the Step 5 determination *can* be made on the basis of the Grids without using the services of a vocational expert. Here, the ALJ concluded that Plaintiff's mental impairment does not present "severe" functional limitations and that she can perform simple, unskilled work and satisfactorily deal with the public. *See Record* at 18. He therefore properly relied solely on the Grids. *See,*

---

[4] *E.g., Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005) (treating physician opinion not entitled to controlling weight if it is not well supported by acceptable diagnostic techniques and/or is inconsistent with other substantial evidence in record; decision to give less than controlling weight supported by substantial evidence where ALJ reasoned doctor based opinion on subjective reports of restrictions by claimant that were not supported by doctor's own records and no other treating doctor noted the restrictions); *Branum v. Barnhart,* 385 F.3d 1268, 1275 (10th Cir. 2004)(decision to give less than controlling weight supported by substantial evidence where ALJ rejected doctor opinion because doctor only saw claimant twice, records reflect few clinical findings or diagnostic tests, and doctor did not specialize in impairment at issue); *Scott v. Barnhart,* ___ Fed. Appx. ___, 2005 WL 469658 (10th Cir. 3/1/05) ("We further conclude that the ALJ adequately considered the *Watkins* factors in his decision. He discussed the length of plaintiff's treatment relationship with Dr. Butcher, as well as the nature and extent of that relationship. He thoroughly discussed the degree to which Dr. Butcher's opinions were and were not supported by relevant evidence, as well as the inconsistencies between Dr. Butcher's opinions and the record as a whole, and we find ample record support for the ALJ's findings in these regards."); *Vakas v. Barnhart,* 120 Fed. Appx. 766, ___, 2005 WL 226247 at **2-3 (10th Cir. 2/1/05) ("The cryptic disability forms completed by plaintiff's physicians fail to provide such evidence. They consist almost entirely of conclusory statements (or check marks) that plaintiff was 'disabled.' *Cf. Knipe v. Heckler,* 755 [F.2d] 141, 145 (10th Cir. 1985) ('evidence is not substantial if it [is] merely conclusory'); *Castellano* [*v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994)] ('A treating physician's opinion may be rejected if his conclusions are not supported by specific findings'). Absent are supporting test results or specific findings showing or stating the actual restrictions, limitations, or residual abilities that plaintiff had during this period. . . . Accordingly, like the district court, we reject 'plaintiff's argument that the ALJ erred by declining to give controlling weight to [the] opinions [of his treating physicians].'").

*e.g., Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (an ALJ may rely upon the grids if a nonexertional impairment of no significance exists); *Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir. 1988) ("The mere presence of a nonexertional impairment does not automatically preclude reliance on the grids").

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 9)* is DENIED, and the decision of the Commissioner is **affirmed**. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.